GEORGE R. SWASEY, receiver, *vs.* THEODORE H. EMERSON & others.

Suffolk.    January 29, 1897. — February 27, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, & KNOWLTON, JJ.

*Reliance upon Prior Mortgage without Production of it — Unrecorded Assignment — Priority — Notice of Trust — Corporation — Evidence of Authority of President to execute Discharge — Equity.*

If a mortgagee of land takes the mortgage in good faith and for value, relying upon the discharge of a prior mortgage and the title as it appears in the registry, and does not demand production of the discharged mortgage or the mortgage note, which are then outstanding in the hands of an assignee under an unrecorded assignment, the latter cannot maintain a bill in equity against the former to establish the invalidity of the discharge and the priority of the earlier mortgage.

Every grantee of land has notice that there may be a trust outstanding, but he is not called on to inquire about it, unless he has notice that there is one.

At the hearing of a bill in equity to establish the invalidity of a discharge, executed by the president of a corporation, of a mortgage given to the corporation, it appeared that he did most of the corporation's business in the city where it had its office, and, before executing this discharge, made many deeds on its behalf, each of which had attached to it a certificate of what purported to be a vote of the directors authorizing the deed, signed by the secretary; that a similar certificate was appended to this discharge; and a purported copy of a vote

giving the president a general authority to discharge mortgages was put in evidence ; and it also appeared that the records of the corporation were out of the State, and could not be produced. *Held,* that there was ample evidence that the president had authority to execute the discharge in question.

BILL IN EQUITY, filed March 19, 1895, by the receiver of the Debenture Investment Company, against Theodore H. Emerson, Julian A. Roett, the Boston Safe Deposit and Trust Company, and the American Loan and Trust Company, to have discharges executed by the Debenture Investment Company to Roett of three mortgages of land in Cambridge declared void and the mortgages entitled to priority over a mortgage of the same land executed by Roett to Emerson. Hearing before *Lathrop,* J., who dismissed the bill, and, at the plaintiff's request, reported the case for the consideration of the full court; such decree to be entered as justice and equity might require. The facts appear in the opinion.

*G. R. Swasey & J. Nelson,* for the plaintiff.

*F. Ranney,* for Emerson.

*S. Lincoln & F. P. Sears,* for the Boston Safe Deposit and Trust Company.

HOLMES, J. Early in 1893 one Rice executed three mortgages to the Debenture Investment Company, of which the plaintiff has been appointed receiver. In January, 1894, the company assigned and delivered these mortgages and notes to the Boston Safe Deposit and Trust Company, upon certain trusts for its creditors. The last named company delivered them to the American Loan and Trust Company, its successor in the trusts, and a new assignment was executed by the debenture company to the latter. None of the assignments were ever recorded. In November, 1894, after the assignment, the Debenture Investment Company executed discharges of the mortgages to one Roett, which were dated November 1, but acknowledged and recorded on November 12. The report states that Roett received conveyances of the equities on or about November 1, 1894. The date in the bill is November 7, and this is said by the defendants to be the true date, which it will be seen is later than the date of the discharges. But whatever the dates, we must assume, in accordance with the clear meaning of the report, that the discharges were made after Roett had become owner of the equities in the mortgaged land. At the same time that

he received the discharges, Roett made a new mortgage of the land to Emerson, who took it in good faith and for value, relying upon the discharges and the title as it appeared in the registry. Emerson did not demand production of the discharged mortgages or the mortgage notes, which then were outstanding in the hands of the American Loan and Trust Company. This bill is brought to establish the priority of the earlier mortgages and the invalidity of the discharges. The justice who heard the case dismissed the bill, and reported the substance of the evidence.

The main argument for the plaintiff in a few words is, of course, that Emerson had notice of the mortgages and of the possibility that the notes might have been assigned by the mortgagee, as they had been in fact, in which case the right of the mortgagee to make the discharges was at an end, and that therefore he was bound to call for the notes before relying on the discharges, just as a mortgage debtor is bound to do before he can pay the debt to the mortgagee with safety, or as in the case of a would be purchaser of the mortgage debt. *Biggerstaff* v. *Marston*, 161 Mass. 101.

The argument for Emerson is equally obvious, and in our opinion must prevail. When the title to land is dealt with, the intent of the registry laws is that purchasers should not be required to look beyond the registry of deeds further than is absolutely necessary. The assignment of the mortgages was a conveyance within Pub. Sts. c. 120, § 4, which the assignees might have had recorded and in that way have protected themselves. Not having been recorded, it is invalid as against Emerson by the express terms of the statute. To give the American Loan and Trust Company a better claim against the land as holders of the notes than it got by the conveyance of the land is to defeat the statute by indirection. It does not claim by way of trust, as when the note is transferred without assignment of the mortgages, and if it did, to say that Emerson had notice of the trust, although not recorded under Pub. Sts. c. 141, § 2, really is to beg the question. He only had notice that there might be one. Every grantee of land has notice that there may be a trust outstanding, but he is not called on to inquire about it unless he has notice that there is one. See *Norman* v. *Towne*, 130 Mass. 52, 54. The principle on which we go is established by *Wolcott* v. *Winchester*, 15 Gray, 461. There the defendant's

grantor bought of a mortgagee of land his interest in the mortgaged land. He owned the equity in a part of the land, and in a part he did not. It was held that his title as to the former portion was good as against a prior unrecorded assignment of the mortgage, although it followed the note as to the residue. See also *Morris* v. *Bacon*, 123 Mass. 58, 59 *ad fin.* Our opinion is supported by many decisions elsewhere. *Ladd* v. *Campbell*, 56 Vt. 529. *Williams* v. *Jackson*, 107 U. S. 478, 483, 484. *Bacon* v. *Van Schoonhoven*, 87 N. Y. 446, 451, 452. *Connecticut Ins. Co.* v. *Talbot*, 113 Ind. 373. *Daws* v. *Craig*, 62 Iowa, 515. *Ferguson* v. *Glassford*, 68 Mich. 36, 47. *Swartz* v. *Leist*, 13 Ohio St. 419. *Girardin* v. *Lampe*, 58 Wis. 267. *Henderson* v. *Pilgrim*, 22 Tex. 464.

The question is raised by the plaintiff as to the authority of the president of the debenture company to execute the discharges. The president did most of the company's business in Boston, and before executing these discharges made many deeds on its behalf, each of which had attached to it a certificate signed by the secretary of what purported to be a vote of the directors authorizing the deed. A similar certificate was appended to each of these deeds. There was also what purported to be a copy of a vote giving the president a general authority to discharge mortgages. The records were out of the State and could not be produced. The evidence of authority was ample. *Commonwealth* v. *Reading Savings Bank*, 137 Mass. 431, 440. See *England* v. *Dearborn*, 141 Mass. 590, 592.

*Bill dismissed.*