## No. 10,845.

### STETLER *v.* WINEGAR, ET AL.

Decided June 2, 1924.

Action to foreclose mortgage. Judgment quieting title in defendant.

*Affirmed.*

1. BILLS AND NOTES—*Mortgages—Assignment.* The transfer or assignment of a negotiable promissory note carries with it as an

incident, the mortgage upon real estate or chattels given to secure its payment.

2. MORTGAGES—*Release—Innocent Purchaser.* A party gave a mortgage on real estate to secure the payment of her promissory note; the note was assigned to plaintiff; subsequently the mortgagee executed a release of the mortgage which was duly recorded; thereafter defendant purchased the property relying upon the record title, and having no actual notice of the mortgage. A judgment quieting title in the innocent purchaser as against the holder of the mortgage indebtedness is affirmed.

*Error to the District Court of Yuma County, Hon. L. C. Stephenson, Judge.*

Messrs. GODSMAN & GODSMAN, Messrs. ALLEN, WEBSTER & DRATH, for plaintiff in error.

Mr. LOUIS VOGT, for defendants in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

WHILE the record title of the lands in controversy was in Barbara M. Scherrer, she gave to J. G. Scherrer a mortgage thereon, which was duly recorded, as security for the payment of her negotiable promissory note made and delivered to him as payee. Before the note was due Mr. Scherrer sold and assigned it to Grant Stetler, the plaintiff, for a valuable consideration. After he parted with the note, and while Stetler was its owner and holder, Mr. Scherrer, the mortgagee, executed a written release and discharge thereof, and this instrument was recorded with the county recorder of the county in which the land is situate. Thereafter, and by divers conveyances, the title of this land thus standing unincumbered on the record in the name of Barbara M. Scherrer, was conveyed to defendant A. W. Winegar. Winegar relied entirely upon this unincumbered record title of his remote grantor Barbara Scherrer, and had no actual knowledge or notice of any defect or flaw therein, and there was nothing on the face of the record to cast a cloud upon it. At the time the note

was assigned to Stetler there was no separate written assignment of the recorded mortgage.

The law of this state, following the decisions of the Supreme Court of the United States, is that the transfer or assignment of a negotiable promissory note carries with it as an incident the mortgage upon real estate or chattels given to secure its payment. Stetler, the owner and holder of the note, brought this action, naming as defendants the two Scherrers and Winegar, the innocent purchaser. The object of the action was to have the note established as a valid debt against the maker, for a foreclosure of the mortgage as still the property of Barbara M. Scherrer, and to have the title thus acquired as the result of a sale under foreclosure made superior to the rights of Winegar under his deed of conveyance.

The defendants other than Winegar defaulted. The case as tried was between Grant Stetler, owner and holder of the note and the equitable owner of the mortgage, and Winegar the innocent purchaser. The court, upon the issues joined, found that Winegar's title to the land was superior to that of the owner of the mortgage note, refused a foreclosure, and quieted title in Winegar as against the plaintiff. The latter is here with his writ of error.

The question for decision is whether a release of a mortgage given to secure a negotiable promissory note, by an original mortgagee payee, who has transferred the note for value to another prior to maturity, and who after the maturity of the note releases the mortgage of record, although not then the owner or holder thereof, creates such a title of record as protects a subsequent purchaser, who relies upon the record thus made, as against the claim of the owner and holder of the note secured by the mortgage which has not been paid.

The question is not free from difficulty. It has been decided differently by different courts, under different recording statutes. It is the doctrine of the federal courts, as declared in *Carpenter v. Longan*, 16 Wall. 271-274, (21 L. Ed. 313), that "the note and mortgage are inseparable;

the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." The inferior federal courts of course are bound by that decision, and have uniformly adhered to it. The federal courts generally, and some state courts, under facts similar to those in the case at bar, hold that the title of the real owner and holder of the negotiable note is superior to that of the innocent purchaser, without notice, who relies solely upon the record title. *Lee v. Clark, et al.,* 89 Mo. 553, 1 S. W. 142; *Black v. Reno,* 59 Fed. 917; *Swift v. Bank of Washington,* 114 Fed. 643, 52 C. C. A. 339; and *First National Bank of Chicago v. Baird,* 141 Fed. 862-869, 73 C. C. A. 96, are some of the leading cases. They hold that where the statute of a state does not require, but merely authorizes or permits, an assignment of a mortgage to be recorded, the recording of the same is not constructive notice to any one; and where there is no legal duty resting upon the assignee of a mortgage thus to notify one of his rights, he is not obliged to have his mortgage recorded in order to preserve them. These courts say that a proposed purchaser may protect himself by the use of ordinary care to see to it that the person who is about to receive payment for lands purchased is the owner and holder of the notes, especially when this fact may be ascertained by simply asking such person to produce the evidence of his indebtedness, and failing to do so, he acts at his peril.

The case is one of first impression in this court. Were it not for a decision of our Court of Appeals, hereinafter referred to, holding that in such a case as is now before us, the equity of the innocent purchaser is superior to that of the innocent defrauded note holder, I would be inclined to follow the decisions of the Supreme Court and the federal courts generally, for the reasons they state, and to preserve that harmony of decision between the state and federal courts which is highly desirable. The majority of the court, however, are of opinion that as our Court of Appeals, in *Delta County L. & C. Co. v. Talcott,* 17 Colo.

App. 316, 68 Pac. 985, has held, under our recording act, in favor of the innocent purchaser as against the defrauded note holder, and are of opinion that is the better doctrine, we should not now overrule it. That was a case of a release of a trust deed and not of a mortgage. Whether or not there is any distinction between a trust deed and a mortgage that would exclude one from, and include the other within, the operation of the rule, is not of practical importance. If, however, there is any distinction, it would seem that there is a stronger reason for holding to the doctrine of the Talcott case, in the case of a release of a mortgage, than in the release of a trust deed to a private trustee. In the Talcott case it was held that a release deed by the private trustee of a trust deed comes within the meaning of our recording act, and where, as in the instant case, after the maturity of the note secured by a deed of trust, the private trustee executes to the owner of the equity a release deed, which is placed on record and which duly recites that it was executed at the request of the payee of the notes and in consideration of their payment in full, and when in fact the notes are not paid and the release is executed without the authority or knowledge of the holder of the notes, as between the holder of the notes and the owner of the equity of redemption, the release is fraudulent and void, yet one who purchases from the owner for value, without notice of the fact that the notes have not been paid, acquires a title free from the lien of the trust deed.

Section 4902 (C. L. 1921) provides that all deeds and agreements in writing of or affecting the title to real estate, or any interest therein, may be recorded in the office of the recorder of the county wherein such real estate is situated, and from and after the filing thereof for record in such office, and not before, they shall take effect as to subsequent bona fide purchasers and incumbrancers by mortgage, judgment, or otherwise, not having notice thereof. While as between immediate parties such agreements are not affected or made void by a failure to file for record, such unrecorded instruments do not take effect as against a sub-

sequent bona fide purchaser who has no notice thereof. There are statutes of other states which expressly declare that a failure to file for record such instruments renders them void. Our statute does not expressly so declare, but there is no difference, so far as affects the rights of subsequent purchasers without notice, between a statute which declares such instruments void and those declaring that they shall not take effect without a filing for record.

The application of this statute to the case in hand is this: that the plaintiff, Stetler, when the mortgagee payee sold and assigned to him before maturity the note which the mortgage was intended to secure, had the opportunity to demand and receive of him at the same time an assignment of the mortgage, which he was entitled to have placed on the public records. As between the immediate parties and subsequent purchasers with actual notice, the assignment of the note itself was sufficient to carry with it as an incident the securing mortgage. The assignee could have demanded a written assignment which he could have filed for record, and which, when filed, would be notice to all the world of his rights as the owner of the notes and the equitable owner of the mortgage. He did not see fit to take such assignment or file such an assignment of record. Neglecting to avail himself of the permission afforded by the statute, his equity must be held inferior to the equity of a subsequent purchaser of the mortgaged property, who relied solely upon the record title, which showed on its face an unincumbered title in his remote grantor, Mrs. Scherrer. *City Bank of Portage v. Plank,* 141 Wis. 653, 124 N. W. 1000, 135 Am. St. Rep. 62, 18 Ann. Cas. 869, is in point. *Marling v. Jones,* 138 Wis. 82, 119 N. W. 931, 131 Am. St. Rep. 997.

Though not cited in the briefs, we have not overlooked *Barlow v. Hitzler,* 40 Colo. 109, 90 Pac. 90. There we held that "an attempted release of a trust deed by the trustee without authority from the holder of the trust deed, or the payment of the debt secured thereby, is invalid." That case, in its facts, is essentially different from the facts in

this record. There the trial court found specifically that the adverse claimant of title to the land included in the deed of trust, initiated subsequent to the fraudulent release, had, at the time his rights accrued, actual and full knowledge of all the fraudulent acts and intents of the former trustee who made the release and of the participation therein by the maker of the trust deed for whose benefit the fraudulent release was made.

The judgment, being in accordance with our views, is affirmed.